IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA | : | CRIMINAL |
| --- | --- | --- |
| v. | : | NO. 09-218 |
| BRANDON PIPER | : | |

## OPINION

**Slomsky, J.**                                                                                   **June 20, 2012**

### I.   INTRODUCTION

On November 3, 2011, Defendant Brandon Piper pled guilty to one count of distribution of heroin and one count of distribution of marijuana. On November 8, 2011, Defendant also pled guilty to one count of aiding and abetting the distribution of heroin. Since entering the guilty pleas, Defendant has filed three Motions: a Motion for Discovery in Aid of Motion to Dismiss Based on Prosecutorial Misconduct and/or Motion to Withdraw Guilty Plea (Doc. No. 158), a Motion to Dismiss the Indictment (Doc. No. 189), and a Supplemental Motion to Dismiss the Indictment (Doc. No. 197). After consideration of the Motions and arguments made by counsel in their briefs, and for reasons set forth below, the Court will: 1) deny the Motion for Discovery in Aid of Motion to Dismiss Based on Prosecutorial Misconduct and/or Motion to Withdraw Guilty Plea (Doc. No. 158); 2) deny the Motion to Dismiss [the] Indictment (Doc. No. 189); and 3) deny the Supplemental Motion to Dismiss [the] Indictment (Doc. No. 197).

1

## II. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A. Events Prior to Trial

On July 15, 2009, Defendant Brandon Piper was charged in an eight count Indictment. (Doc. No. 1.) The charges are as follows: Count One – distribution, and aiding and abetting the distribution, of heroin resulting in death in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C) and 18 U.S.C. § 2; Count Two – distribution, and aiding and abetting the distribution, of heroin in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C) and 18 U.S.C. § 2; Count Three – distribution, and aiding and abetting the distribution, of heroin to a person under twenty one years of age in violation of 21 U.S.C. § 859(a) and 18 U.S.C. § 2; Count Four – distribution, and aiding and abetting the distribution, of heroin within 1,000 feet of a public housing facility in violation of 21 U.S.C. 860 and 18 U.S.C. § 2; Count Five – distribution of heroin in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C); Count Six – distribution of heroin within 1000 feet of the real property comprising a school in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C) and 860; Count Seven – distribution of marijuana in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(D); and Count Eight – distribution of marijuana within 1000 feet of the real property comprising a school in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C) and 860.

Counts One through Four cover conduct that occurred on August 18, 2007.[1] On that day, Piper, then 19-years old, is charged with pooling his money with a friend, E.B., who was 16-years old, to purchase heroin. Piper, E.B., and a female acquaintance, Amber Barger ("Barger"),

---

[1] Counts Four through Eight do not relate to the events of August 18, 2007. Counts Five and Six charged the distribution of heroin and distribution of heroin within 1,000 feet of Central Pennsylvania College on March 4, 2008, and Counts Seven and Eight charge the distribution of marijuana for remuneration and distribution of marijuana for remuneration within 1,000 feet of Central Pennsylvania College on March 10, 2008.

2

drove to a housing project in Harrisburg, Pennsylvania, where Barger had purchased controlled substances previously. Barger was given money by Piper and E.B., went into the housing project and purchased heroin. Later that evening, E.B. died of an apparent drug overdose. The dose was injected into E.B. by Barger at her residence while Piper waited outside in a car. Barger eventually cooperated with the Government and, pursuant to a plea agreement, testified against Defendant at trial.

On August 5, 2011, the Court held a hearing on all pending pretrial Motions, including a Motion for Supplemental Discovery regarding the "disclosure of any cooperation agreement with Amber Barger, namely the specifics of any details of any express or implied agreement with Amber Barger relative to her prosecution in state court in lieu of federal prosecution . . . ." (Doc. No. 108 ¶ 14.) At the hearing, Government counsel represented that Barger was being prosecuted in state court. Government counsel then represented that a verbal agreement existed between the Government and Barger. Government counsel further represented that a written agreement would be necessary and forthcoming and that the written agreement would encompass all promises made by the Government to Barger. Counsel represented that they would promptly provide defense counsel with the written agreement as part of the Government's obligation under Brady v. Maryland, 373 U.S. 83 (1963). Government counsel stated as follows:

> Government Counsel: [Other than the proffer letter][2] . . . there are no other agreements between the Government and Ms. Barger absent she will be prosecuted in the state for her participation. The Federal Government will apprise the State prosecutor of Ms. Barger's continued

---

[2] The proffer letter is an earlier letter the Government sent to Barger's counsel to begin the process of her cooperation. It is separate from the plea agreement letter dated September 6, 2011.

3

|                     |                                                                                                                                                                                                                                                                                                                      |
|---------------------|----------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
|                     | cooperation with us, and of her anticipated testimony at trial.                                                                                                                                                                                                                                                      |
|                     | What we further indicated was that if we formalized our agreement with Ms. Barger, that we understood our obligation to turn that over to [defense counsel] . . . immediately. . . . But there is no formal agreement between the parties.                                                                           |
|                     | However, I did delineate in my response what the understanding between the parties is. And essentially Ms. Barger is not being prosecuted federally for her proffer protected statements. She has been charged locally for the distribution of August – |
| The Court:          | She's already been arrested [for state charges]?                                                                                                                                                                                                                                                                     |
| Government Counsel: | Yes, and charged locally.                                                                                                                                                                                                                                                                                            |
| The Court:          | I think the transcript of the State –                                                                                                                                                                                                                                                                                |
| Defense Counsel:    | The docket entries for the State –                                                                                                                                                                                                                                                                                   |
| The Court:          | – the docket entries was [sic] made available to me. Right?                                                                                                                                                                                                                                                          |
| Defense Counsel:    | Yes, they were appended to my motion.                                                                                                                                                                                                                                                                                |
| Government Counsel: | Yes. She has been charged. She has not been sentenced.                                                                                                                                                                                                                                                               |
| Defense Counsel:    | She hasn't pled guilty.                                                                                                                                                                                                                                                                                              |
| Government Counsel: | And she has not pled guilty. Well, obviously. She has not pled guilty, she has not been sentenced. There is no written agreement between the parties. Should the Government reduce that agreement to writing, it will be provided to [defense counsel] immediately.                                                  |
|                     | But the only understanding is what I have stated. The only thing in writing is the proffer letter which Mr. Cogan does have a copy of.                                                                                                                                                                               |

Hearing Transcript, August 5, 2011 ("H'rg Tr., Aug. 5, 2011"), 37:19-38:11.

\*     \*     \*

|                     |                                                                                                  |
|---------------------|--------------------------------------------------------------------------------------------------|
| The Court:          | So she's not being prosecuted for her role on August 18, [20]07?                                 |
| Government Counsel: | As a distributor, yes, she is. That is – that is what's she's being prosecuted in the State, for distribution. |
| The Court:          | On August 18th.                                                                                  |
| Government Counsel: | Correct.                                                                                         |

Id. at 42:25-43:6.

4

|                      |                                                                                                                                                                                                    |
|----------------------|----------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
| The Court:           | \*       \*       \*<br>You have not seen her – you have not seen the State file?                                                                                                                   |
| Government Counsel:  | No. No. I don't need to see the State file. I know she's going to plead –                                                                                                                          |
| The Court:           | You have not seen the affidavit of probable cause?                                                                                                                                                 |
| Government Counsel:  | Don't need to see it, Judge. I know she's pleading guilty to distributing those drugs.[3] That's what I know it is. If the State has – the State investigated this case before we did.             |

Id. at 44:6-15.

Barger was not prosecuted by federal authorities. Instead, she was prosecuted in the state court in Cumberland County, Pennsylvania, for the distribution of heroin on August 18, 2007 to E.B., a minor, and Defendant Brandon Piper.

On September 6, 2011, Government counsel sent a letter to Barger's attorney detailing the agreement between the Government and Barger (the "September 6th Letter"). A copy of the letter was also sent to counsel for Defendant Piper. (Doc. No. 167 ¶ 9 and Ex. A.) This letter contains the entire agreement between the Government and Barger. It reads as follows:

> In light of the fact that your client, Amber Barger, has the right to assert the Fifth Amendment privilege in response to questions asked of her in the trial of United States v. Brandon Piper, Criminal Number 09-218, currently scheduled for trial on October 31, 2011, the United States Attorney's Office for the Eastern District of Pennsylvania ("USAO-EDPA") hereby grants immunity to your client on the following terms and conditions:
>
> 1. The USAO-EDPA will not use testimony or other information provided by your client in this matter pursuant to this agreement, or any information directly or indirectly derived from such testimony or other information, against your client in any criminal case, except a prosecution for perjury or giving a false statement.

---

[3] During a subsequent telephone conversation held on March 5, 2012 among counsel and the Court, the prosecutor stated Barger's attorney informed her of this disposition. Hearing Transcript, March 5, 2012, ("H'rg Tr., Mar. 5, 2012"), 8:8-14.

5

> 2. Your client must supply complete and truthful information to the attorneys and law enforcement officers of the government, as well as truthful testimony during the trial and in any other proceeding related to or arising from this investigation. Your client must answer all questions concerning the subject matter of this investigation and must not withhold any information. Your client must neither attempt to protect any person or entity through false information or omission, nor falsely implicate any person or entity.
>
> 3. Notwithstanding this grant of immunity, your client can and will be prosecuted under the federal perjury statutes for any material false statement knowingly made while under oath.
>
> 4. This grant of immunity is also predicated upon your client not contesting the charges in the matter of Commonwealth v. Amber Barger in The Court of Common Pleas of Cumberland County, Criminal Docket number 21-1355-2010 charging your client with felony possession with intent to deliver a controlled substance (heroin) on August 18, 2007, arising out of her distribution of heroin to E.B., a juvenile and Brandon Piper. In that matter your client faces a maximum possible sentence of fifteen years in prison and a fine in the amount of $250,000.
>
> 5. Only the USAO-EDPA is bound by this agreement which is in lieu of a formal immunity order under 18 U.S.C. § 6001 et seq. This agreement does not and shall not be construed to impose any duty or limitation on the USAO-EDPA beyond that which would be imposed if a formal immunity order were to be issued by the Court.

(Id.)

### B. Trial Events

On October 31, 2011, the trial against Defendant commenced. On November 3, 2011, the Government called Barger to testify about her involvement in the events of August 18, 2007 that led to the death of E.B. from the overdose of heroin. During her testimony, she was questioned regarding her cooperation with the Government:

| | |
|---|---|
| Government Counsel: | What is the maximum sentence you face in state court? |
| Barger: | It's 15 or 20 years. |
| Government Counsel: | And have you discussed that maximum sentence with your lawyer? |

| | |
|---|---|
| Barger: | Yes. |
| Government Counsel: | Now, you've agreed to cooperate with the federal government. Is that correct? |
| Barger: | Yes. Yes. |
| Government Counsel: | And is your testimony here part of your agreement to cooperate? |
| Barger: | Yes. |
| Government Counsel: | Do you expect that the local prosecutors handling your case will be made aware of your cooperation with the federal government? |
| Barger: | Yes. |
| Government Counsel: | And do you expect to receive consideration for your cooperation with us by the local prosecutors? |
| Barger: | Yes. Absolutely. |
| Government Counsel: | Now, what are you expecting? |
| Barger: | A reduced sentence |

Hearing Transcript, November 3, 2011 ("H'rg Tr., Nov. 3, 2011"), 188:6-25.

\*        \*        \*

| | |
|---|---|
| Government Counsel: | . . . [I]s it your understanding that this grant of immunity is based on you not contesting or fighting the charges in state court? |
| Barger: | Yes. |

Id. at 192:24-193:2.

On November 4, 2011, following direct testimony, counsel for Defendant cross-examined Barger. During cross-examination, defense counsel questioned Barger about her involvement with the distribution of heroin on August 18, 2007. He also questioned her about her pending state court charges and her immunity from federal prosecution. The transcript reads, in relevant part:

| | |
|---|---|
| Defense Counsel: | And you have agreed – and you and the government have agreed that you're never going to be charged; isn't that correct? |
| Barger: | It is my understanding that as long as I testify truthfully that |

7

>                              I will not be prosecuted federally as long – and also, as long
>                              as I do not contest my charges in state court. I have charges in
>                              state court.

Hearing Transcript, November 4, 2011 ("H'rg Tr., Nov. 4, 2011"), 110:8-14.

\*     \*     \*

| | |
|---|---|
| Defense Counsel: | I'm asking you if you think the federal prosecutors are going to come into court for you and stick up for you with the sentencing judge and ask him to give you a light sentence because of what you're doing here today? |
| Barger: | I understand that because of my cooperation the state court is going to be made aware of my cooperation and testifying in this case. |
| Defense Counsel: | You're hoping on not going to jail at all; right? |
| Barger: | I do not want to go to jail; that's correct. |

Id. at 117:23-118:6.

\*     \*     \*

| | |
|---|---|
| Defense Counsel: | You don't think you're going to jail at all, do you, ma'am? |
| Barger: | I do not know if I'm going to jail. |

Id. at 118:16-18.

As noted previously, on November 3, 2011, Defendant pled guilty to Count 5, distribution of heroin on March 4, 2008, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C), and Count Seven, distribution of marijuana on March 10, 2008, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(D). On November 8, 2011, after seven days of trial and after the Government rested, Piper pled guilty to Count 2, aiding and abetting the distribution of heroin on August 18, 2007, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C) and 18 U.S.C. § 2. The remaining Counts were to be dismissed at the time of sentencing.

C. Barger's State Court Case

As noted, Amber Barger was involved in the events occurring on August 18, 2007. Though the Government agreed she would not be prosecuted federally, the District Attorney for Cumberland County did file state court charges against her.

During the years before Defendant's trial and the months following, the entries in Barger's state court case were available on the public docket of the Court of Common Pleas of Cumberland County. The docket notes that on May 7, 2010, Barger applied for acceptance into the accelerated rehabilitative disposition ("ARD") program and awaited an ARD hearing.[4] (Doc. No. 198 at Ex., 1) A series of continuances and pre-trial conferences ensued. On February 16, 2012, the docket again shows Barger still awaiting an ARD hearing. (Id.) On May 23, 2012, the

---

[4] The Supreme Court of Pennsylvania has described the ARD program as follows:

> ARD, accelerated rehabilitative disposition, is a pretrial disposition of certain cases, in which the attorney for the Commonwealth agrees to suspend prosecution for an agreed upon period of time in exchange for the defendant's successful participation in a rehabilitation program, the content of which is to be determined by the court and applicable statutes.
> Under the ARD rules, which this Court created in 1972 pursuant to our authority to supervise the lower courts, the district attorney has the discretion to refuse to submit a case for ARD, and if the case is submitted for ARD, the court must approve the defendant's admission. These rules, which appear at Pa. R. Crim. P. 175-185, also provide that the defendant must agree to the terms of the ARD, and that after he has completed the program successfully, the charges against him will be dismissed, upon order of court. If he does not complete the ARD successfully, he may be prosecuted for the offense with which he was charged. The district attorney's utilization of ARD is optional under the rules.

Commonwealth v. Lutz, 495 A.2d 928, 931 (Pa. 1985).

docket notes Barger was accepted into the ARD program. (Id.) The disposition of her case is shown as follows:

| Status Date | Processing Status |
|---|---|
| 5/23/2012 | Awaiting ARD Assessments |
| 5/23/2012 | Awaiting ARD Completion |

(Id.)

\* \* \*

| Date Filed | Entries |
|---|---|
| 5/23/2012 | Non DUI ARD – Defendant to be supervised for 6 months. |
| 5/23/2012 | ARD Penalties Imposed |

(Id., Ex. at 6.)

### D. Post-Trial Events

On February 29, 2012, defense counsel filed the Motion for Discovery in Aid of Motion to Dismiss Based on Prosecutorial Misconduct and/or Motion to Withdraw Plea of Guilty (Doc. No. 158.) In this Motion, which is discussed further below, Defendant stated he tailored his cross-examination of Barger based on his belief that Barger would plead guilty to distribution in state court as stated by the federal prosecutor at the August 5, 2011 pretrial hearing. Although he knew about her pending application for an ARD disposition well before trial, defense counsel initially did not believe she would receive an ARD disposition in her state court case, but recently had learned that she would be placed in the ARD Program. He therefore filed the instant Motion seeking discovery.

On March 2, 2012, the Government filed a Response to the Motion and, on March 5, 2012, Defendant filed a Reply. (Doc. Nos. 167, 170.) On that same date, the Court held a

10

telephone conference on the record, but did not rule on the Motion. During the March 5, 2012 telephone conference, the Government denied having any involvement with Barger's application for the ARD program.

On May 5, 2012, based upon the alleged Government misconduct, Defendant filed a Motion to Dismiss [the] Indictment. (Doc. No. 189.) On May 18, 2012, the Government filed a Response in Opposition. (Doc. No. 195.) Finally, on May 23, 2012, Defendant filed a Supplemental Motion to Dismiss [the] Indictment. (Doc. No. 197.) The Supplemental Motion seeks the same relief, but quotes the trial testimony of Barger, which Defendant did not have when he filed his first Motion. On May 24, 2012, Defendant also filed an exhibit that attached Barger's state court docket as of that date. (Doc. No. 198.) As noted, it shows that on the day before, May 23, 2012, she was accepted into the ARD Program and placed on six months supervision.

## III. ANALYSIS AND DISPOSITION OF PENDING MOTIONS

### A. Motion for Discovery in Aid of Motion to Dismiss Based on Prosecutorial Misconduct and/or Motion to Withdraw Plea of Guilty (Doc. No. 158)

On February 29, 2012, Defendant filed a Motion for Discovery in Aid of Motion to Dismiss Based on Prosecutorial Misconduct and/or Motion to Withdraw Plea of Guilty. (Doc. No. 158.) Defendant argues that, despite Barger's critical role in the events taking place on August 18, 2007, Barger may receive an ARD disposition.[5] Consequently, Defendant contends

---

[5] As noted, the docket notes Barger applied for acceptance into the ARD Program before Defendant's trial began in federal court on October 31, 2011. Defense counsel was aware of this application before trial. Defendant's trial concluded on November 8, 2011, when he entered the guilty plea to Count Two. Barger was accepted into the ARD Program on May 23, 2012.

11

that, at a minimum, the Government knew that Barger might enter the ARD Program, and that this information should have been revealed to Defendant. (See id. at ¶ 13.) Further, Defendant claims there must be additional information regarding the Government's grant of immunity on federal charges to Barger and the circumstances leading to Barger's ARD disposition. (Id. at 12.) Consequently, Defendant asserts the Government withheld material critical to his defense, in violation of Brady v. Maryland, 373 U.S. 83 (1963).[6] Defendant now seeks that discovery. (Doc. No. 158 at 1.)

In response, Government counsel argues that the only agreement between the Government and Barger is the September 6th Letter, which was timely disclosed to Defendant. (Doc. No. 167 ¶ 9.) Further, the Government asserts that it "has never had a 'side deal' with Barger, or with the state prosecutor's office, concerning Barger's open state charges. In addition, [the Government] has never told the state prosecutor's office how it should handle Barger's case or otherwise influenced that office's decision regarding Barger." (Id. at ¶ 15.)

On March 5, 2012, the Court held a telephone conference on the Motion for Discovery and the Government's Response. (Doc. Nos. 158, 167.) During that telephone conference, the Government again represented that "[they] have turned over the immunity letter dated September 6th of 2010 [sic] which is the agreement in writing between the [G]overnment and Ms. Barger." H'rg Tr., Mar. 5, 2011, 4:14-17. Government counsel stated that "the [G]overnment's agreement with Ms. Barger is exactly what is contained in the [September 6th] written document and that is what we report[] both to defense counsel and to the Court, the letter having been turned over in

---

[6] As discussed *infra*, Brady requires the prosecution to disclose all evidence that is material to the accused's guilt or innocence, or punishment. 373 U.S. at 87.

discovery." Id. at 5:20-24. Further, the Government asserted it had "nothing to do with what [Barger] did in the state, except [Barger] could not contest the charges. That's all [the Government] had to do with what [Barger] could do in the state. [The Government] has nothing else to do with how [Barger] proceeded [in state court.]" Id. at 13:25-14:4.

For the following reasons, the Motion for Discovery (Doc. No. 158) will be denied. "An attorney's obligation to the court is one that is unique and must be discharged with candor and with great care. The court and all parties before the court rely upon representations made by counsel." Baker Industr., Inc. v. Cerberus Ltd., 764 F.2d 204, 212 (3d Cir. 1985). Thus, an "attorney's word is his bond." LaSalle Nat'l Bank v. First Connecticut Holding Grp., LLC, 287 F.3d 279, 293 (3d Cir. 2002) (quoting Baker Industr., 764 F.2d at 212.).

In both the Response and during the March 5, 2012 telephone conference, the Government represented to the Court that the September 6th Letter contains the full agreement between the Government and Barger, and that no additional terms exist. Further, the September 6th Letter was timely disclosed to defense counsel before the commencement of trial. Finally, Government counsel has stated that they played no role in securing the ARD disposition of Barger's state court case other than informing the state prosecutor of Barger's cooperation in the federal case. H'rg Tr., Mar. 5, 2012, 13:25-14:14.

The Court accepts the Government's representations that all information regarding the Government's agreement with Barger have been turned over. The letter quoted above in full contains Barger's plea agreement with the Government. Based upon its content, defense counsel could have cross-examined Barger at trial about her ARD application and what sentence she expected to receive in state court. Her seeking and being accepted into the ARD Program did not

13

violate her agreement with the Government not to contest the charges in state court. No further discovery on her plea agreement is warranted. Accordingly, the Motion for Discovery in Aid of Motion to Dismiss Based on Prosecutorial Misconduct and/or Motion to Withdraw Guilty Plea will be denied. (Doc. No. 158.)

> B. Motion to Dismiss [the] Indictment (Doc. No. 189) and Supplemental Motion to Dismiss [the] Indictment (Doc. No. 197)[7]

In Defendant's Motion to Dismiss the Indictment and Supplemental Motion to Dismiss, Defendant again moves to dismiss the Indictment based on prosecutorial misconduct. (Doc. Nos. 189, 197.) He contends that the Government committed a Brady violation when Government counsel: 1) failed to disclose that Barger would be eligible for and receive ARD based on her cooperation, and 2) permitted Barger to falsely testify at trial that she only anticipated a reduced sentence and was not sure whether she would go to jail. He argues that these omissions severely affected the defense of the case because Defendant asserts that she played a more significant role in the distribution of heroin. Therefore, if Defendant knew she was to receive only an ARD sentence, he may not have entered a guilty plea. (Doc. No. 189 at 23-24.)

Pursuant to Brady v. Maryland, 373 U.S. 83 (1963), and its progeny, the government must disclose evidence that is favorable to the accused and material to either guilt or punishment. Brady, 373 U.S. at 87. "To establish a Brady violation, it must be shown that 1) evidence was

---

[7] Defendant's Motion to Dismiss [the] Indictment was prepared and submitted without the benefit of the transcript of Barger's trial testimony. (Doc. No. 189.) Accordingly, defense counsel filed the Supplemental Motion to Dismiss [the] Indictment. (Doc. No. 197.) It seeks relief identical to that requested in the Motion to Dismiss the Indictment, but adds quotes of Barger's testimony. Accordingly, the Court will address these two Motions together.

suppressed; 2) the evidence was favorable to the defense; and 3) the evidence was material to guilt or punishment." United States v. Risha, 445 F.3d 298, 303 (3d Cir. 2006) (citing United States v. Pelullo, 299 F.3d 197, 209 (3d Cir. 2005)).

Notably, the duty to disclose Brady material extends beyond material actually held by the prosecution. See Giglio v. United States, 405 U.S. 150, 154 (1972). Prosecutors have "a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police." Kyles v. Whitley, 514 U.S. 419, 437 (1995). The Third Circuit has construed the term "constructive possession" of Brady material to mean that "although a prosecutor has no actual knowledge, he should nevertheless have known that the material at issue was in existence. Accordingly, we consider *whether the prosecutor knew or should have known of the materials* even though they were developed in another case." Risha, 445 F.3d at 303 (quoting United States v. Joseph, 996 F.2d 967, 970 (3d Cir. 1991)) (emphasis added).

When confronted with a case where an alleged Brady violation is based on failure to disclose information held by a separate governmental entity, the Third Circuit has considered: "1) whether the party with knowledge of the information is acting on the government's 'behalf' or is under its 'control'; 2) the extent to which state and federal governments are part of a 'team,' are participating in a 'joint investigation' or are sharing resources; and 3) whether the entity charged with constructive possession of the information has 'ready access' to the evidence." Risha, 445 F.3d at 304.

Before applying the three-part test here, it should be emphasized first and foremost that the Government did not withhold favorable evidence. The defense and the Government knew before trial about Barger's ARD application and no representation of the federal prosecutor

15

precluded defense counsel from cross-examining her about it. Her plea agreement with the federal authorities was set forth in the September 6, 2011 Letter, which was timely disclosed to the defense. Barger did not provide false testimony at trial on direct or cross-examination about her plea agreement with the Government. No favorable information was concealed as alleged by the defense.

As to the first element, whether the party with knowledge of the information is acting on the government's behalf or under its control, it is evident here that the District Attorney of Cumberland County separately prosecuted Barger for her drug distribution on August 18, 2007. The fact that federal authorities would inform the state prosecutor of Barger's cooperation does not mean that the state was acting on the Government's behalf or under its control. The state prosecutor was not bound by the plea agreement to exercise its prosecutorial discretion in Barger's case in a manner dictated by the federal prosecutor.

Next, the court must consider whether the Government and state prosecutors worked as a team. Here, the Government has represented that they have not been involved in Barger's state court case, except in accordance with the plea agreement and notifying the state prosecutors of her cooperation. This action does not amount to collaboration in Barger's state prosecution and ultimate acceptance into the ARD Program. Instead, the Government has stated that: "The [G]overnment had no control over Ms. Barger's decision to apply for ARD; that was her decision. Nor, as federal prosecutors, could we determine whether she will . . . be approved into the ARD program. That is the state court's decision." H'rg Tr., Mar. 5, 2012, 7:11-15. Further, the Government represented that: "The [G]overnment was not aware that Ms. Barger would pursue any programs until after we looked at the docket and saw that she had applied for and had

paid a fee for ARD." Id. at 8:22-25.

The Supreme Court of Pennsylvania has held that the power to recommend a case to ARD lies solely in the hands of a state prosecutor. See Commonwealth v. Lutz, 495 A.2d 928, 935 (Pa. 1985). As the Court has stated: "the decision to submit . . . [a] case for ARD rests in the sound discretion of the district attorney, and absent an abuse of that discretion involving some criteria for admission to ARD wholly, patently and without doubt *unrelated* to the protection of society and/or the likelihood of a person's success in rehabilitation, such as race, religion or other such obviously prohibited considerations, the attorney for the Commonwealth must be free to submit a case or not submit it for ARD consideration based on his view of what is most beneficial for society and the offender." Id. (emphasis in original). In short, the state prosecutor did not act as a team with the federal authorities when he agreed to allow Barger to be placed in the ARD Program.

The final element in deciding whether a Brady violation has occurred is whether the entity charged with constructive possession of evidence favorable to the accused has "ready access" to the evidence. Here, the docket in Barger's case in the Cumberland County Court of Common Pleas was readily available to the Government. The docket includes relevant information, including the dates of Barger's application and acceptance into ARD.

Barger's state court docket, however, was also readily available to any member of the public with Internet access, including Defendant. In fact, government counsel stated they only learned of Barger's application for the ARD Program when counsel for Defendant attached a copy of Barger's state court docket to his Motion for Discovery. H'rg Tr., Mar. 5, 2012, 9:8-15. In addition, counsel for Defendant acknowledged that he possessed Barger's docket and knew

17

before Defendant's trial that she had applied for and was awaiting an ARD hearing as far back as May 7, 2010. Id. at 11:15-12:7. Despite the Government's awareness of the ARD application, this information was in the possession of defense counsel because it was part of the public record and readily accessible.

Two additional facts warrant a finding that no Brady violation occurred. First, the chronology of events supports a finding that the Government did not know that Barger would ultimately receive an ARD disposition on her state court charges until after Defendant's trial. Though Barger was awaiting an ARD hearing on May 7, 2010 and February 16, 2012, she was not finally admitted to the ARD program until May 23, 2012. Defendant entered his guilty pleas on November 3, 2011 and November 8, 2011, over six months prior to the disposition of Barger's ARD application. Prior to and at trial, the Government could not misrepresent that Barger would be entering the ARD program because it did not know at that time that Barger ultimately would be accepted into the ARD Program.

Finally, as noted above, counsel for Defendant stated that he possessed Barger's state court docket as early as August, 2011. See H'rg Tr., Mar. 5, 2012, 12:7-12. Barger testified at trial on November 3-4, 2011. Defense counsel had ample opportunity to cross-examine Barger about her potential admission to the ARD program. Counsel did cross-examine Barger about her potential sentence, and was not precluded from cross-examining her about the ARD application.

Considering these facts, Defendant has failed to prove a Brady violation. He has not shown that the state prosecutor acted on behalf of the Government, the Government and the Cumberland County District Attorney's Office acted as a team, and that evidence favorable to the defense was purposely withheld. Both the Government and Defendant had ready access to

docket information on Barger's state court case. See Risha, 445 F.3d at 304.

Finally, the chronology of events and availability of cross-examination demonstrate no Brady violation occurred. Barger's plea agreement was set forth in the letter from the federal prosecutor dated September 6, 2011. It was properly disclosed to the defense in accordance with Brady v. Maryland, *supra*, and Giglio v. United States, 405 U.S. 150, 153-55 (1972) (holding that due process requires a prosecutor to disclose a witness's immunity from prosecution in return for his testimony). Accordingly, the Motion to Dismiss [the] Indictment and the Supplemental Motion to Dismiss [the] Indictment also will be denied. (Doc. Nos. 189, 197).

## IV. CONCLUSION

For reasons stated above, the Court will: 1) deny the Motion for Discovery in Aid of Motion to Dismiss Based on Prosecutorial Misconduct and/or Motion to Withdraw the Guilty Plea (Doc. No. 158); 2) deny the Motion to Dismiss [the] Indictment (Doc. No. 189), and; 3) deny the Supplemental Motion to Dismiss [the] Indictment (Doc. No. 197).

An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA | : | CRIMINAL |
| --- | --- | --- |
| v. | : | NO. 09-218 |
| BRANDON PIPER | : | |

**ORDER**

AND NOW, this 20th day of June 2012, upon consideration of Defendant Brandon Piper's 1) Motion for Discovery in Aid of Motion to Dismiss Based on Prosecutorial Misconduct and/or Motion to Withdraw Guilty Plea (Doc. No. 158), 2) Motion to Dismiss [the] Indictment (Doc. No. 189), and 3) Supplemental Motion to Dismiss [the] Indictment (Doc. No. 197), all related briefs, arguments presented by counsel for both parties at a telephone conference held on March 5, 2012, and for reasons explained in this Court's Opinion dated June 20, 2012, it is ORDERED as follows:

1) Defendant's Motion for Discovery in Aid of Motion to Dismiss Based on Prosecutorial Misconduct and/or Motion to Withdraw Guilty Plea (Doc. No. 158) is DENIED.

2) Defendant's Motion to Dismiss [the] Indictment (Doc. No. 189) is DENIED.

3) Defendant's the Supplemental Motion to Dismiss [the] Indictment (Doc. No. 197) is DENIED.

BY THE COURT

*Joel Slomsky*
JOEL H. SLOMSKY, J.